## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MARIO PALOMA, *et. al.*,

                 Plaintiffs,

      v.

GOVERNOR PHIL MURPHY, *et. al.*,

                 Defendants.

Civ. Action No. 23-1036 (JXN) (SDA)

**<u>OPINION</u>**

<u>**NEALS**</u>, District Judge

    This matter comes before the Court on the motions to dismiss filed by Defendants Governor Phil Murphy ("Governor Murphy"), (ECF No. 43) and Rutgers University-The State University of New Jersey ("Rutgers"), (ECF No. 44) (collectively "Defendants") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiffs filed opposition to Defendants' motions (ECF Nos. 50, 51), and Defendants replied (ECF Nos. 68, 69). The Court has considered the parties' submissions and has declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, Plaintiffs' Second Amended Complaint is dismissed without prejudice.

## I. BACKGROUND[1]

    Plaintiffs are incarcerated at the Adult Diagnostic and Treatment Center ("ADTC") in Avenel, New Jersey. (ECF No. 46 at 6.) Defendant Phil Murphy is the Governor of the State of

---

[1] For the purposes of these motions to dismiss, the Court accepts as true all factual allegations in the Amended Complaint and draws all inferences light most favorable to Plaintiffs. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

New Jersey and Defendant Rutgers had a contract with the State of New Jersey to provide psychological testing and treatment services at ADTC. (*See id.* at 6, 28.)

In February 2023, Plaintiffs[2] filed a Complaint raising claims under the federal Civil Rights Act, 42 U.S.C. § 1983, the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and various state laws in connection with the determinations that Plaintiffs' conduct as sex offenders was "compulsive and repetitive" under the New Jersey Sex Offender Act, N.J. Stat. Ann. §§ 2C:47-1 to -10. (*See generally* ECF No. 1.) Following the grant of a motion for leave to amend, Plaintiffs filed an Amended Complaint on June 12, 2023. (ECF Nos. 13, 14.) On November 14, 2023, Defendants filed their motions to dismiss. (ECF Nos. 43, 44.) On November 22, 2023, Plaintiffs were again granted leave to amend to add additional Plaintiffs (ECF No. 45), and the operative Second Amended Complaint was filed on the same day (ECF No. 46). In April 2024, Defendants requested that the Court treat Defendants' pending motions to dismiss (ECF Nos. 43, 44) as equally applying to Plaintiffs' Second Amended Complaint. (*See* ECF Nos. 113, 114.)

The Second Amended Complaint asserts claims arising under the following: (1) Fourteenth Amendment Due Process Clause[3] (Count One); (2) Fourteenth Amendment Equal Protection Clause and New Jersey law against Discrimination (Count Two); (3) state law Breach of Contract and Implied Covenant (Count Three); (4) Americans with Disabilities Act (also Count Three); (5) state law Negligence, Fraud, Unjust Enrichment (Count Four); and (6) state law Misappropriation of Funds (Count Five). (*See* ECF No. 46 at 8-20.) The Court construes Count Two of the Second Amended Complaint as also raising the following claims: (1) Fifth Amendment privilege against

---

[2] The Court notes that not all Plaintiffs were named in the initial Complaint.
[3] Although Plaintiffs state that they raise a Fifth Amendment Due Process clause claim at Count One, the Court considers the *pro se* nature of the Second Amended Complaint and liberally construes Count One as raising a Fourteenth Amendment Due Process Clause claim.

self-incrimination; (2) Eighth Amendment cruel and unusual punishment; and (3) the Americans with Disabilities Act. (*See id.* at 12-15.)

The Second Amended Complaint asserts that Plaintiffs' due process rights were violated when they were subject to N.J. Stat. Ann. § 2C:47-1, which requires that persons convicted of certain enumerated sexual offenses submit to psychological tests to determine if their conduct is "compulsive and repetitive." (*Id.* at ¶ 1.) Plaintiffs contend that the term "compulsive and repetitive" is undefined. (*Id.* at ¶ 2.) Beginning in 2009 to the present, Plaintiffs were individually taken to the ADTC for "testing" for "compulsive and repetitive" behavior by Rutgers personnel who "purported to be a psychologist or psychiatrist." (*Id.* at ¶ 5-6.) The interviews required Plaintiffs to complete a "battery of written tests dealing mainly with cognitive reasoning" in areas of math and logic. (*Id.* at ¶ 11.)

Plaintiffs allege that they were never informed that the data collected during the interviews would be used in connection with their sentences, nor did they authorize having their medical information collected and shared with state agencies. (*Id.* at ¶¶ 7, 10.) Further, they were never informed of any right to refuse participation or have legal representation. (*Id.* at ¶¶ 8, 9.)

Plaintiffs assert that during their interviews, they received "covert threats from the state agent that failing to declare to be 'compulsive and repetitive' would result in being sent to a 'regular prison,'" where they would face potential violence, and were steered to tailor their responses accordingly. (*Id.* at ¶¶ 12-13.) Plaintiffs further claim that during their interviews the state agent "demanded Plaintiffs incriminate themselves by insisting that they discuss details to charges already dismissed by the court, charges that were not part of the legal case against them or were simply unproven allegations" and this information was used against them to find them "compulsive and repetitive." (*Id.* at ¶¶ 17-19.) Further, the state agents who performed the testing

failed to inform the sentencing court that Plaintiffs' "answers were given with the aim of being sent to the ADTC as a way to avoid [] violence." (*Id.* ¶ 15.)

Plaintiffs further claim that every test resulted in the Plaintiffs being "diagnosed" as "compulsive and repetitive." (*Id.* at ¶ 21.) The "diagnoses" were subsequently used against Plaintiffs during sentencing, to determine treatment, to deny parole opportunities, and to demand "more invasive and stricter parole requirements." (*Id.* at ¶¶ 24-27.)

Plaintiffs assert that 80 percent of the overall individuals diagnosed as being "compulsive and repetitive" are members of a "minority group, foreign-born, a member of the LGBTQ+ community, or suffering from an intellectual/mental disability." (*Id.* at ¶ 29.) Plaintiffs allege that some of them were not proficient in English and were not offered the services of translators to assist in the tests. (*Id.* ¶¶ 30, 31.) Plaintiffs further allege that the State has used their "compulsive and repetitive" "diagnoses" against them to "enact laws, policies, rules and procedures that have no correctional justification or value, and that are designed solely to discriminate against the Plaintiffs based on their race, place of origin, intellectual/mental disability, and/or sexual orientation, by denying them access to the same parole, educational, rehabilitative, and recreational opportunities offered to all other inmates in the New Jersey state prison system." (*Id.* at ¶ 32.)

The Second Amended Complaint cites various legislative measures that Plaintiffs allege discriminate against those with a "compulsive and repetitive" diagnosis. These include Assembly Bill A4370, which rescinded the mandatory minimum period of parole ineligibility and permitted the reduction of up to 50% of the sentences of inmates except sex offenders deemed "compulsive and repetitive" (*Id.* at ¶ 33); Executive Order 103, issued by Governor Murphy in 2020, which provided for a sentence reduction of up to eight months for "any inmate in the custody of the Commissioner of Corrections," except those whose conduct was "compulsive and repetitive" (*Id.*

at ¶¶ 34-35); and Bill 1254, which provided for geriatric parole and possible early release for inmates over age 65 who served one-third of their sentences or twenty-five years for those sentenced to life imprisonment, except for sex offenders deemed "compulsive and repetitive" (*Id.* at ¶ 36).

Plaintiffs claim that in 2017, Defendant Governor Murphy, as the Chief Executive Officer of the State, reached an agreement with Defendant Rutgers and other institutions to provide college accredited courses in all its prisons, except the ADTC. (*Id.* at ¶ 37.) In 2009, the State enacted N.J. Stat. Ann. § 30:4-92, which mandated workforce skills training (including the use of computers and the internet) for state inmates serving sentences exceeding ten years and made inmates who participated in such training eligible for commutation time, unless they were inmates who were found to be "compulsive and repetitive." (*Id.* at ¶¶ 38-40.) Plaintiffs allege that the Governor "allowed [New Jersey Department of Corrections] officials to dismantle the computer la[b] at the ADTC." (*Id.* at ¶ 41.)

Plaintiffs claim that Defendant Governor Murphy discriminates against them by enforcing N.J. Stat. Ann. § 2C:43-6.4,8, which "illegally extends the statutory sentences of the Plaintiffs to life sentences." (*Id.* at ¶ 42.) Plaintiffs also allege that Defendant Governor Murphy discriminates against them by enforcing Covid-19 restrictions, including quarantines, at ADTC but not at other State prisons. (*Id.* at ¶ 43.) Finally, Plaintiffs allege that the State's contract with "JPay," a purveyor of email and other computer-based services to prisoners, discriminates against those found to be "compulsive and repetitive" because those inmates are not eligible to receive discounted e-books like other inmates. (*Id.* at ¶ 44.)

Plaintiffs contend that beginning in 2021, Defendant Governor Murphy "breached the contracts made with the individual Plaintiffs through their plea agreements to provide them with

adequate therapy to address their alleged mental conditions when, in an arrangement with Rutgers [], [the State] agreed to drastically reduce the number of treatment sessions for all inmates in the facility by up to 90 percent." (*Id.* at ¶ 46.) Plaintiffs claim that the diminished therapy is used against them to deny them opportunities for parole. (*Id.* at ¶ 46.) Plaintiffs further claim that Defendant Governor Murphy also failed to create a therapeutic environment by "employing custodial tactics counterproductive to the treatment of people suffering from a mental condition, such as allowing the verbal abuse of the people housed at the ADTC." (*Id.* at ¶ 47.) Plaintiffs allege there is routine humiliation of sex offenders at ADTC, who are called "retards" and other demeaning names. (*Id.* at ¶ 49.) Plaintiffs also note that ADTC staff refer to medication time as "happy hour." (*Id.*) Plaintiffs allege that Defendant Governor Murphy denies them therapeutic opportunities offered to "English-speaking inmates" and "able inmates." (*Id.* at ¶¶ 50-51.)

The Second Amended Complaint alleges that "for more than three (3) years [Defendant Governor Murphy] has refused to repair the facility's only elevator, relegating all handicapped inmates to the third floor with (sic)[out] access to the same access to the same programs or recreation offered to all able inmates in the facility." (*Id.* at ¶ 52.) Plaintiffs also contend that the requirement that those found to be "compulsive and repetitive" be screened by the Special Classification Review Board ("SCRB") to be eligible for parole is not a requirement for other inmates. (*Id.* at ¶ 54.) Regarding parole, Plaintiffs also allege that they do not receive mandated in-person parole hearings at the intervals prescribed by N.J. Admin. Code § 10A:9-8.4. (*Id.* at ¶ 55.)

Plaintiffs allege that Defendant Rutgers "diagnosed" Plaintiffs with a "mental condition it knew or should have known had no medical basis" to secure "patients for its treatment program at [ADTC]" and defraud New Jersey taxpayers of "millions of dollars in service contracts." (*Id.* at ¶¶

59-60.) Defendant Rutgers denied Plaintiffs therapeutic opportunities offered to all English-speaking inmates, reduced therapeutic treatment opportunities, denied Plaintiffs access to their medical records, and failed to report issues of "mental, emotional, and physical abuse by [New Jersey Department of Corrections] personnel." (*Id.* at ¶¶ 63-67.) Plaintiffs also claim that Defendant Rutgers "failed in their duty to refer for parole consideration 'inmates who have made exceptional progress as determined by the mental health staff.'" (*Id.* at ¶ 68.)

Plaintiffs allege that they have been denied access to their Inmate Welfare Accounts funds and a detailed accounting of the funds, as otherwise required by N.J.A.C. 10A:2-3.2. (*Id.* at ¶¶ 70 - 71.) Plaintiffs further contend that the funds were used for purposes other than those determined under N.J. Admin. Code § 10A:2-3.2. (*Id.* at ¶ 72.) Plaintiffs also allege that Governor Murphy was negligent and discriminated against Plaintiffs when he failed to install a Board of Trustees to oversee the operations of the ADTC, pursuant to N.J. Stat. Ann. § 30:4-1 and N.J. Admin. Code § 30:4-1.1. (*Id.* at ¶¶ 73, 74.)

Plaintiffs seek monetary damages and multiple forms of injunctive relief. (*See id.* at 20-24.)

In November 2023, Defendants moved to dismiss the Second Amended Complaint. (ECF Nos. 43, 44.) Plaintiffs opposed (ECF Nos. 50, 51) and Defendants replied (ECF Nos. 68, 69). The motions are now fully briefed and ready for disposition.

## II. LEGAL STANDARD

### A. Rule 12(b)(1) Standard

As courts of limited jurisdiction, federal courts possess only that power authorized by the Constitution and statute. *Cardona v. Bledsoe*, 681 F.3d 533, 535 (3d Cir. 2012). Federal Rule of

Civil Procedure 12(b)(1) provides a mechanism for challenging subject matter jurisdiction of a federal court.

"A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). Where a defendant attacks a complaint as deficient on its face, "the court must consider the allegations of the complaint as true." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). If the motion to dismiss presents a factual attack on the complaint, a court may consider evidence outside the pleadings. *Gould*, 220 F.3d at 176 (citing *Gotha v. United States*, 115 F.3d 176, 178–79 (3d Cir. 1997)). It is the plaintiff's burden to establish jurisdiction. *Id.* at 178 (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### B. Rule 12(b)(6) Standard

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading is sufficient so long as it includes "a short and plain statement of the claim showing that the pleader is entitled to relief" and provides the defendant with "fair notice of what the ... claim is and the grounds upon which it rests[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (internal quotations omitted). In considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all the facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). Moreover, dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id.*

While this standard places a considerable burden on the defendant seeking dismissal, the facts alleged must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Stated differently, the allegations in

the complaint "must be enough to raise a right to relief above the speculative level." *Id.* Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis to state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In order to determine whether a complaint is sufficient under these standards, the Third Circuit requires a three-part inquiry: (1) the court must first recite the elements that must be pled in order to state a claim; (2) the court must then determine which allegations in the complaint are merely conclusory and therefore need not be given an assumption of truth; and (3) the court must assume the veracity of well-pleaded factual allegations and ascertain whether they plausibly give rise to a right to relief. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).

## III. DISCUSSION

Defendants move for dismissal of Plaintiffs' Second Amended Complaint in its entirety. Defendants argue that the Court lacks subject matter jurisdiction to hear Plaintiffs' claims based on the *Rooker-Feldman* doctrine. Defendants also argue that Plaintiff Palomo's claims are barred under the doctrine of *res judicata* and the remainder of the Second Amended Complaint must be dismissed for failure to state a claim for relief. The Court addresses these arguments in turn.

### A. Subject Matter Jurisdiction- *Rooker-Feldman* Doctrine

Defendant Murphy moves for dismissal of Plaintiffs' procedural and substantive due process claim (Count One). (ECF No. 43-1 at 28-31.) Defendants argues that the *Rooker-Feldman* doctrine bars Plaintiffs' challenge to the state court judgments, finding Plaintiffs' offenses involved repetitive and compulsive conduct. (*Id.*)

The *Rooker-Feldman* doctrine is a narrow one confined to cases in which a plaintiff complains of injuries caused by a state-court judgment. Under the *Rooker-Feldman* doctrine, a losing state-court party is "barred from seeking what in substance would be appellate review of

the state judgment in a United States district court, based on [a] claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994).

"[T]here are four requirements that must be met for the *Rooker-Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments"; the second and fourth factors are "the key to determining whether a federal suit presents an independent, non-barred claim." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (internal citations, quotations, and alterations omitted). The Third Circuit has emphasized the narrowness of the doctrine, distinguishing between injuries caused by the state-court judgment and those brought about by the defendants' actions. *See id.* at 167–68. In so doing, the Third Circuit has "recognized that caution is now appropriate in relying on [its prior] formulation of the *Rooker–Feldman* doctrine, which focused on whether the state and federal suits were 'inextricably intertwined.'" *Id.* at 169 (internal quotations, citations omitted). *Rooker-Feldman* does not present a jurisdictional bar to federal review when the plaintiff asserts not "merely" that the "state-court decisions were incorrect," *id.* at 172, but that "people involved in the decision violated some independent right," *id.*; *see also Geness v. Cox*, 902 F.3d 344, 361 (3d Cir. 2018) (finding that mentally ill pretrial detainee's federal claims arising from his protracted detention on criminal charges were not barred by the *Rooker-Feldman* doctrine where such claims were not presented to or ruled upon by the state courts).

Here, Defendants argue that the *Rooker-Feldman* doctrine bars Plaintiffs' due process claim because Plaintiffs "effectively ask the court to annul or modify the judgments of the State courts which classified Plaintiffs' conduct as repetitive and compulsive." (ECF No. 43-1 at 29.)

While it is true that a portion of relief sought suggests that Plaintiffs are seeking to undermine the state court determination that their behaviors were compulsive and repetitive, they are not explicitly challenging that determination here. Rather, Plaintiffs are challenging as unconstitutional the New Jersey statute that allows for a finding of "compulsive and repetitive." Therefore, Plaintiffs do not appear to seek appellate review of their criminal sentences or to reject the state court's findings that their behaviors were "compulsive and repetitive." As such, the *Rooker-Feldman* doctrine is inapplicable. The motion to dismiss for lack of jurisdiction under *Rooker-Feldman* is denied.

## B. Plaintiff Palomo's Claims are Barred by Res Judicata and the Entire Controversy Doctrine

Defendants argue that Plaintiff Mario Palomo's claims are barred by the doctrine of *res judicata*. (ECF No. 43-1 at 45-47, ECF No. 44-8 at 11-12.) Defendants claim that Plaintiff Palomo previously litigated the instant due process claims (Count One) in the Superior Court of New Jersey, resulting in the dismissal with prejudice of said claims.[4] (*See id.*)

State law as to *res judicata*, also known as claim preclusion, governs the preclusive effect of a state judgment in federal court. *See Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir. 1999); *Allen v. McCurry*, 449 U.S. 90, 96 (1980). Federal and New Jersey law require the same basic elements for claim preclusion to apply:

> (1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to[,]or in privity with[,] those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one.

---

[4] "In addition to the complaint itself, the court can review documents attached to the complaint and matters of public record, and a court may take judicial notice of a prior judicial opinion." *McTernan v. City of York, Penn.*, 577 F.3d 521, 526 (3d. Cir. 2009).

*Watkins v. Resorts Int'l Hotel and Casino, Inc.*, 124 N.J. 398, 412 (1991) (citing *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 398 (1981)). New Jersey, however, has a somewhat broader *res judicata* doctrine known as the entire controversy rule. The rule encompasses not only claims within the scope of the prior judgment, but also all claims and parties that a party could have joined in a prior case based on the same transaction or occurrence. *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 885 (3d Cir. 1997) (quoting *Circle Chevrolet Co. v. Giordano, Halleran & Ciesla*, 142 N.J. 280, 662 A.2d 509 (1995)). "A federal civil rights claim that could have been, but was not, presented in a previous state court action, can be precluded in a federal court action in accordance with state claim preclusion doctrine." *Tancrel v. Mayor and Council of Twp. Of Bloomfield*, 583 F. Supp. 1548, 1550 (D.N.J. 1984).

This Court finds that all three requirements for claim preclusion are met here. As to the first element of the claim preclusion test, the state court issued final judgments on the merits when it granted Defendants Governor Murphy and Rutgers' motions to dismiss Plaintiff Palomo's state court civil complaint against them in the Superior Court of New Jersey, Law Division. (*See generally* ECF Nos. 43-2 and 44-5.) While Plaintiffs acknowledge that Plaintiff Palomo filed a civil complaint in state court that was "similar to the current one (although it did not contain all the allegations listed in the instant complaint)," they argue that the New Jersey Superior Court dismissed Plaintiff Palomo's state civil complaint "without prejudice for lack of prosecution" on April 1, 2022. (ECF No. 51 at 39; *see also* ECF No. 51 at 62.) Following the dismissal without prejudice, however, the state court ultimately dismissed the state action with prejudice on April 14, 2022. (*See* ECF No. 44-5.) The state court noted the following background:

> This matter comes before the Court by way of Defendant Rutgers, the State University of New Jersey [] motion to dismiss. By way of relevant procedural history, the Court notes that on April 2, 2022, this matter was dismissed without prejudice for lack of prosecution.

> Defendant now seeks to dismiss Plaintiff's complaint with prejudice.

(ECF No. 44-5 at 2, *Palomo v. Yates*, Docket No. MID-L-3514-21 (N.J. Super Ct. Law Div. April 14, 2022).) The exhibits provided by Defendants show that the state court dismissed with prejudice Plaintiff Palomo's state court action against Defendant Murphy on September 24, 2021, and against Defendant Rutgers on April 14, 2022. (*See* ECF Nos. 43-2 and 44-5.) Therefore, there was a valid, final judgment on the merits in state court.

The second element of the claim preclusion test is met as Plaintiff Palomo and Defendants Murphy and Rutgers are the same parties in both actions.

The third element for claim preclusion is satisfied as the claims in the instant matter and those complained of in Plaintiff Palomo's state court action involve "substantially similar or identical causes of action and issues, parties, and relief sought." *Wadeer v. N.J. Mfrs. Ins. Co.*, 220 N.J. 591, 110 A.3d 19, 27-28 (2015) (quoting *Culver v. Ins. Co. of N. Am.*, 115 N.J. 451, 559 A.2d 400, 405 (1989)). To decide substantial similarity, courts must determine:

> (1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first); and (4) whether the material facts alleged are the same.

*Id.* The New Jersey Supreme Court has observed that this element is "the most difficult to determine" for a claim preclusion analysis. *Id.*

In both actions, Plaintiff Palomo challenges the constitutionality of N.J. Stat. Ann. § 2C:47-1. Plaintiff Palomo previously litigated his instant Count One, challenging on due process grounds his classification as a sex-offender whose conduct is "compulsive and repetitive" under N.J. Stat. Ann. § 2C:47-1. (*See generally* ECF No. 69-2; *see also* ECF No. 43-2 at 27-33, *Palomo v. Yates*,

Docket No. MID-L-3514-21 (N.J. Super Ct. Law Div. Sept. 24, 2021); *see also* ECF No. 44-5, *Palomo v. Yates*, Docket No. MID-L-3514-21 (N.J. Super Ct. Law Div. April 14, 2022)). In his state court action, Defendant Palomo raised a procedural due process claim, "challenging the legality of the 'compulsive and repetitive' classification and the medical and legal consequences derived from it in not only his case, but in the cases of thousands of other who have been similarly 'diagnosed.'" (ECF No. 69-2 at 10-11.) Plaintiff Palomo argued that the process for labeling a defendant as "compulsive and repetitive" lacked constitutional protections guaranteed under federal and state law. (*Id.* at 10-21.) Here, Plaintiffs raise multiple nearly identical issues with the process used to determine their behavior was "compulsive and repetitive" and the effects of that determination. (*Compare* ECF No. 62-2 at 11-21, *with* ECF No. 46 at ¶¶ 5-27.) In state court, Plaintiff Palomo further claimed that N.J. Stat. Ann. § 2C:47-1 violated his substantive due process rights because "compulsive and repetitive" is undefined and lacks clear meaning. (ECF No. 69-2 at 21-25.) Plaintiffs raise the same argument here. (ECF No. 46 at ¶ 1-4.)

The demand for relief in both actions is essentially the same. Plaintiff Palomo sought declaratory and injunctive relief to have the constitutionality of N.J. State. Ann. § 2C:47-1 reviewed and to have all "legislative, legal, and operational rules, regulations, policies, and laws that employ the 'compulsive and repetitive' classification as basis or part of their structure be annulled." (ECF No. 69-2 at 27-28.) Plaintiff Palomo also sought to have the "classification and term 'compulsive and repetitive' expunged from [his] records and the records of all those similarly affected." (*Id.* at 28.) In their federal action, Plaintiffs seek essentially the same remedy, along with other requests for relief. (*See* ECF No. 46 at 20-24.)

The additional relief sought in the instant federal action does not preclude a finding of claim preclusion   as the gravamen of both actions is the same. In this proceeding, Plaintiffs seek

a review of the constitutionality of N.J. Stat. Ann. § 2C:47-1 and to stop the enforcement of any rules or regulations that employ the "compulsive and repetitive" classification. In state court, Plaintiff Palomo sought the same relief. Plaintiff's expansion of the relief requested here is immaterial as long as Plaintiff Palomo had the opportunity to seek that relief in both actions, which he did. *See First Union Nat'l Bank v. Penn Salem Marina, Inc.*, 190 N.J. 342, 921 A.2d 417, 424 (2007)) (applying claim preclusion test and holding that the claims were the same "[a]lthough the demand for relief [was] broader in the [subsequent action]" because it included a new demand for equitable relief); *Culver*, 559 A.2d at 405 (holding the relief sought was "essentially the same, even though in the second action the claim for damages is expanded to include" other forms of relief).

The theories of recovery in the federal and state actions are the same. Both concern the constitutionality of N.J. Stat. Ann. § 2C:47-1 and are therefore the same for the purposes of claim preclusion.

Finally, the evidence and material facts are essentially the same across both the state and federal action. Both actions allege claims regarding the violation of inmates' constitutional due process rights because of a finding of "compulsive and repetitive" behaviors. The evidence required to show that Defendants violated Plaintiffs' federal due process rights is the same in federal and state court, as are the material facts.

Moreover, to the extent that Plaintiff Palomo attempts to raise new claims against Defendants related to his classification as "compulsive and repetitive" under N.J. Stat. Ann. § 2C:47, such claims are barred by the entire controversy doctrine. The entire controversy doctrine "is essentially New Jersey's specific, and idiosyncratic, application of traditional *res judicata* principles." *Rycoline Prod., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997). The

doctrine "is an extremely robust claim preclusion device that requires adversaries to join all possible claims stemming from an event or series of events in one suit." *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 135 (3d Cir. 1999). The Third Circuit has held that New Jersey's entire controversy doctrine applies to bar claims in a federal court when there was a previous state court action involving the same transaction. *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 163 (3d Cir. 1991). The primary consideration in determining if successive claims are part of the same controversy is whether the claims "arise from related facts or from the same transaction or series of transactions." *DiTrolio v. Antiles*, 662 A.2d 494, 502 (N.J. App. Div. 1995).

The Court finds Plaintiff Palomo's claims regarding his Fifth Amendment privilege against self-incrimination (Count One), Eighth Amendment cruel and unusual punishment, Fourteenth Amendment Equal Protection Clause, and ADA (all Count Two) derive from the same or related issues to those Plaintiff asserted in the prior New Jersey state court action. Notably, in state court, Plaintiff Palomo argued that the "compulsive and repetitive" classification automatically triggers "a multiplicity of severe consequences for the individual from dictating the location of his imprisonment[,] to denying him the same parole opportunities afforded to all other state prisoners[,] to being subject to invasive state supervision for the remain[der] of his life." (ECF No. 60-2 at 11.)

Here, Plaintiffs' Fifth Amendment, Eighth Amendment, Fourteenth Amendment Equal Protection Clause, and ADA claims raise issues with the consequences of Plaintiffs being found "compulsive and repetitive." Plaintiffs allege in their equal protection claim that the State used Plaintiffs' classification of being "compulsive and repetitive" against them to enact and enforce laws, policies, rules, and procedures "that are designed solely to discriminate against the Plaintiffs based on their race, place of origin, intellectual/mental disability, and/or sexual orientation, by

denying them access to the same parole, educational, rehabilitative, and recreational opportunities" offered to other inmates not housed at ADTC. (ECF No. 46 at ¶ 32.) Moreover, their Eighth Amendment claim raises how they are treated at the ADTC as a result of being found "compulsive and repetitive." (*Id.* at ¶ 49.) In their ADA claim, Plaintiffs assert that "various statutes and Executive Orders treat sex offenders deemed compulsive and repetitive differently than other State prison inmates." (*Id.* at ¶¶ 33-37.) However liberally the Court construes Plaintiff Palomo's claims here, they pertain to his classification as "compulsive and repetitive" and therefore arise from related facts as those brought in the state action. *DiTrolio*, 662 A.2d at 502.

Based on the above, the Court finds that Plaintiff Palomo's claims in the state and federal proceedings arise from the same transaction and occurrence. Therefore, New Jersey's claim preclusion and entire controversy tests are satisfied, and Plaintiff Palomo's federal claims are barred. Because further amendment could not overcome the deficiencies noted above and therefore would be futile, the Court dismisses with prejudice Plaintiff Palomo's federal claims in the Second Amended Complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

### C. Plaintiffs Fail to Plead Section 1983 Violations of Fifth and Fourteenth Amendment Rights to Due Process (Count One)

Defendants argue that Plaintiffs' procedural and substantive due process claims under the Fifth and Fourteenth Amendments should be dismissed. (*See* ECF No. 43-1 at 31; *see also* ECF No. 44-8 at 12-14.)

#### 1. Fifth Amendment Due Process

Defendant Governor Murphy moves for dismissal of Plaintiffs' Fifth Amendment due process claim, arguing that the Fifth Amendment Due Process Clause applies to federal actors, not state officials. (ECF No. 43-1 at 31.) The Court agrees. *See Bergdoll v. City of York*, 515 F. App'x

165, 170 (3d Cir. 2013) ("Bergdoll's Fifth Amendment claim fails because the Due Process Clause of the Fifth Amendment only applies to federal officials, and [defendant] is a state official."); *Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) ("[T]he due process clause under the Fifth Amendment only protects against federal governmental action and does not limit the actions of state officials."); *Nguyen v. U.S. Cath. Conf.*, 719 F.2d 52, 54 (3d Cir. 1983) ("The limitations of the fifth amendment restrict only federal governmental action.") Plaintiffs' Fifth Amendment rights violation claim fails because "[t]he limitations of the [F]ifth [A]mendment restrict only federal governmental action." *Nguyen v. U.S. Cath. Conf.*, 719 F.2d 52, 54 (3d Cir. 1983). Because Defendants are state, not federal, actors, the Fifth Amendment Due Process Clause is not applicable. Accordingly, the Court dismisses Plaintiffs' Fifth Amendment due process claim.

### 2. *Fourteenth Amendment Procedural Due Process*

Defendant Rutgers moves for dismissal of Plaintiffs' procedural due process claim. (ECF No. 44-8 at 12-14.) Defendant Rutgers argues that Plaintiffs were provided with adequate process. (*Id.* at 13-14.) The Court agrees.

The Fourteenth Amendment prohibits a state actor from depriving "any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. Thus, Plaintiffs must demonstrate that (1) they were deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of "life, liberty, or property," and (2) the procedures available to them did not provide "due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).

To determine the Constitutional procedural protections required in a given case, the Supreme Court has weighed several factors: (1) the nature of the private interest, (2) the countervailing governmental interest, and (3) the risk of error in the ultimate determination created

by not using the requested procedure. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). In considering these factors, the Supreme Court has generally held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property. *See, e.g., Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542 (1985) ("[T]he root requirement' of the Due Process Clause" is "that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest"; hearing required before termination of employment (emphasis in original)); *Wolff v. McDonnell*, 418 U.S. 539, 557–558 (1974) (hearing required before forfeiture of prisoner's good-time credits); *Parham v. J.R.*, 442 U.S. 584, 606–607 (1979) (determination by neutral physician whether statutory admission standard is met required before confinement of child in mental hospital); *Goss v. Lopez*, 419 U.S. 565, 579 (1975) (at minimum, due process requires "*some* kind of notice and . . . *some* kind of hearing" (emphasis in original); informal hearing required before suspension of students from public school).

First, the Court notes that it is unclear what liberty interest Plaintiffs assert. However, Defendants do not argue that Plaintiffs have failed to assert a protected liberty interest. Therefore, the Court will assume, *arguendo*, that Plaintiffs have claimed that they are being deprived of a protected liberty interest.

Next, the Court must determine if Plaintiffs were provided constitutionally adequate due process. Plaintiffs appear to argue that they were not provided adequate process in finding that their behaviors were "compulsive and repetitive." Although Plaintiffs raise a litany of issues regarding the processes Defendant Rutgers did or did not provide during their psychological evaluations, the sentencing court was the ultimate decider in finding Plaintiffs' qualify as "compulsive and repetitive."[5] The New Jersey Supreme Court explained that N.J. Stat. Ann. §

---

[5] Pertinent portions of the Act read as follows:

2C:47-1 to -7 "empower[s] the sentencing court to impose a sentence at [the ADTC] '[i]f the [psychological] examination reveals that the offender's conduct was characterized by a pattern of repetitive, compulsive behavior . . . .'" *State v. Howard*, 110 N.J. 113, 126, 539 A.2d 1203, 1209-10 (1988). Therefore, the Court examines if the sentencing court provided Plaintiffs with constitutionally adequate due process.

Defendant Rutgers argues that the sentencing court provides adequate pre-deprivation procedures, and that Plaintiffs fail to allege that they were not given an opportunity to challenge the evidentiary sufficiency of their sentence. (ECF No. 44-8 at 13-14.) "The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990). Therefore, it is necessary to ask what process the state provided, and whether it was constitutionally adequate. *Id.*

Here, the sentencing court provides constitutionally adequate procedures. As noted above, the New Jersey Superior Court, Law Division considered Plaintiff Palomo's due process claim. (*See* ECF No. 43-2 at 27-33.) The Law Division explained the process provided by the sentencing court to a criminal defendant before a finding of "compulsive and repetitive" as follows:

> In *State v. Horne*, the New Jersey Supreme Court held that criminal defendants possess the right to challenge a report's finding of repetitive and compulsive behavior by way of cross-examination and confrontation. *See* 56 N.J. 372, 375 (1970). Under this

---

2C:47–3. Disposition. a. If the report of the examination reveals that the offender's conduct was characterized by a pattern of repetitive, compulsive behavior and further reveals that the offender is amenable to sex offender treatment and is willing to participate in such treatment, the court shall determine whether the offender's conduct was so characterized and whether the offender is amenable to sex offender treatment and is willing to participate in such treatment and shall record its findings on the judgment of conviction.

N.J. Stat. Ann. § 2C:47–3.

> framework, criminal defendants have a concrete absolute right to confront and examine the report that classifies them as repetitive and compulsive and present contrary expert opinion to the report's author. *Id.* at 375-377. The defendant must or may actually challenge the accuracy or validity of the report's material factual assertions used to determine his or her sentence in order to trigger these additional processes. *Id.* at 377.

(*Id.* at 32.) Here, Plaintiffs do not dispute that they were afforded this pre-deprivation process before the sentencing court finds their behavior "compulsive and repetitive."[6] Procedural due process only requires "the government to accord the plaintiff a hearing to prove or disprove a particular fact or set of facts" that are germane to the legal finding at issue. *Connecticut Dep't of Pub. Safety*, 538 U.S. at 7 (citations omitted). Plaintiffs procedural due process claims will therefore be dismissed.

### 3. *Fourteenth Amendment Substantive Due Process*

Defendant Rutgers next moves for dismissal of Plaintiffs' claim that N.J. Stat. Ann. § 2C:47-1 violates substantive due process, arguing that the statute is not arbitrary or capricious and that Defendants' alleged actions do not approach the threshold of egregious, as to shock the conscious. (ECF No. 44-8 at 13.) Defendant Rutgers argues that Plaintiffs' claim must be dismissed because the statute is not unconstitutionally vague. (*Id.*) The Court agrees.

---

[6] Plaintiffs submit in their response to Defendant Rutgers' motion to dismiss that because their sentencing hearings only employed a preponderance of the evidence standard to find their conduct "compulsive and repetitive" instead of by the clear and convincing evidence standard required by law, their procedural due process rights were violated. (ECF No. 51 at 15.) However, Plaintiffs do not allege this in their Second Amended Complaint. Plaintiffs may not amend their Complaint through a responsive pleading. *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). Therefore, the Court will not consider this argument.
The Court notes, however, that a preponderance of the evidence standard is appropriate at a sentencing hearing because the criminal defendant has already been adjudged guilty beyond a reasonable doubt and "the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him." *McMillan v. Pennsylvania*, 477 U.S. 79, 92 n. 8 (1986) (quoting *Meachum v. Fano*, 427 U.S. 215, 224 (1976)). Only facts that increase a statutory minimum or a maximum sentence must be submitted to a jury and found beyond a reasonable doubt, as described in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) and *Alleyne v. United States*, 570 U.S. 99, 103 (2013). Plaintiffs do not argue that the finding of "compulsive and repetitive" was used to increase their statutory minimum or maximum sentences.

"The Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). In a substantive due process challenge to government conduct, "the threshold question is whether the behavior of the government officer is so egregious, so outrageous, that it may be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998). What "shocks the conscience" is a legal question for the Court to decide. *Benn v. Univ. Health Sys., Inc.*, 371 F.3d 165, 174 (3d Cir. 2004) (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952)).

The Second Amended Complaint does not allege that N.J. Stat. Ann. § 2C:47-1 provides for government conduct that is so outrageous that it shocks the conscience. (*See generally* ECF No. 46.) Nevertheless, such Nevertheless, such an argument would be meritless. Relevant here, Section 2C:47:1 provides that when a person is convicted of a sexual crime, the sentencing judge shall order the Department of Corrections to complete a psychological examination of the offender and "[t]he examination shall include a determination of whether the offender's conduct was characterized by a pattern of repetitive, compulsive behavior and, if it was, a further determination of the offender's amenability to sex offender treatment and willingness to participate in such treatment." N.J. Stat. Ann. § 2C:47-1. The Supreme Court has found that "States [] have a vital interest in rehabilitating convicted sex offenders." *McKune v. Lile*, 536 U.S. 24, 33 (2002). Accordingly, the Court finds that the New Jersey statute allowing for a psychological evaluation to determine if their behavior qualifies as "compulsive and repetitive" and whether the criminal defendant is amenable to rehabilitative treatment does not "shock the conscience." Defendant Rutgers' motion to dismiss is granted on this issue and Plaintiffs' substantive due process claim in this regard will be dismissed.

Another way to show a substantive due process violation, is for a plaintiff to show that a statute is unconstitutional because it is void for vagueness. The Court construes Plaintiffs' Second Amended Complaint as raising a facial challenge to N.J. Stat. Ann. § 2C:47-1. A facial attack to the statute challenges its constitutionally "based on its text alone and does not consider the facts or circumstances of a particular case." *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010).

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972). A statute is unconstitutionally vague under the Due Process Clause if it "(1) 'fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits'; or (2) 'authorizes or even encourages arbitrary and discriminatory enforcement.'" *United States v. Stevens*, 533 F.3d 218, 249 (3d Cir. 2008) (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000)). "In criminal cases, because vagueness attacks are based on lack of notice, they may be overcome in any specific case where reasonable persons would know their conduct puts [them] at risk of punishment under the statute." *United States v. Moyer*, 674 F.3d 192, 211 (3d Cir. 2012).

In determining whether a statute is unconstitutionally vague, federal courts have applied the canons of statutory construction. *U.S. v. Fontaine*, 698 F.3d 221, 226 n. 10 (3d Cir. 2012) (citing *United States v. Thomas*, 932 F.2d 1085, 1090 (5th Cir. 1991) (applying "fundamental" canon of construction "that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning" in assessing vagueness challenge (internal quotation marks and citation omitted.)) Thus, where a statutory term "is not defined in the statute, we must construe the term 'in accordance with its ordinary or natural meaning.'" *United States v. Alvarez–Sanchez*, 511 U.S. 350, 357 (1994) (quoting *FDIC v. Meyer*, 510 U.S. 471, 476 (1994)).

N.J. Stat. Ann. § 2C:47-1 provides in pertinent part:

> Whenever a person is convicted of the offense of aggravated sexual assault, sexual assault, aggravated criminal sexual contact, ... or an attempt to commit any such crime, the judge shall order the Department of Corrections to complete a psychological examination of the offender. . . . The examination shall include a determination of whether the offender's conduct was characterized by a pattern of repetitive, compulsive behavior and, if it was, a further determination of the offender's amenability to sex offender treatment and willingness to participate in such treatment. . .

The Act neither defines the terms "repetitive" or "compulsive," nor does it explain the meaning of "a pattern of repetitive, compulsive behavior." *See* N.J.S.A. 2C:47–1 to –10.

The New Jersey Superior Court, Appellate Division found N.J. Stat. Ann. § 2C:47-1 was not unconstitutionally vague. *See State v. N.G.*, 381 N.J. Super. 352 (App. Div. 2005). The Superior Court applied federal law in reviewing whether the lack of statutory definitions of "compulsive" and "repetitive" rendered the statute unconstitutionally vague. *Id.* at 359-63. The Appellate Division rejected the criminal defendant's argument that § 2C:47-1 was unconstitutionally vague because the terms "competitive" and "repetitive lacked a statutory definition, explaining the terms "are words of common understanding to the average person." *Id.* at 361. Therefore, the state court found that the terms "should be given their ordinary and well-understood meaning." *Id.* The Appellate Division explained the meaning of the terms can be found in the dictionary and because the definitions are "not abstract and may be understood by a citizen of average intelligence, the statute is not unconstitutionally vague."[7] *Id.* at 362.

The Court agrees with the New Jersey Superior Court, Appellate Division's conclusion that N.J. Ann. Stat. § 2C:47-1is not unconstitutionally vague. The void for vagueness standard is

---

[7] The Appellate Division explained that "Webster's II New Riverside Dictionary 996–97 (1994) defines 'repetitive' as 'repetitious,' with the base word 'repeat' meaning 'to do, experience, or produce again.'" *N.G.*, 381 N.J. Super. at 361. Additionally, "[t]he term 'compulsive,' is defined as 'caused by obsession or compulsion,' with 'compulsion' meaning 'an irresistible impulse to act irrationally.'" *Id.* at 361-62.

based on an understanding of people of "common intelligence." *See Borden v. Sch. Dist. of Twp. of East Brunswick*, 523 F.3d 153, 167 (3d Cir. 2008) (explaining that "a statute is unconstitutionally vague when men of common intelligence must necessarily guess at its meaning"). To the extent the vagueness doctrine applies in this matter[8], Section 2C:47-1 is not unconstitutionally vague measured against this "common intelligence" standard.[9] Defendants Rutgers' motion to dismiss will be granted as to this issue.

### D. Plaintiffs Fail to Plead a § 1983 Fifth Amendment Privilege Against Self-Incrimination Claim (Count One)

Defendant Rutgers' next moves for dismissal of Plaintiffs' Fifth Amendment privilege against self-incrimination claim. (ECF No. 44-8 at 14-16.) In the first count of the Second Amended Complaint, Plaintiffs submit that during their psychiatric evaluations, they were questioned regarding "charges already dismissed by the court, charges that were not part of the legal case against them, or were simply unproven allegations." (ECF No. 46 at ¶ 17.) Plaintiffs claim that the information collected was used in diagnosing Plaintiffs as "compulsive and repetitive" and was included in their pre-sentence report. (*Id.* at ¶¶ 18-19.)

---

[8] It is unclear based on the Second Amended Complaint and the parties' briefing whether they contend that the void for vagueness doctrine applies to N.J. Ann. Stat. § 2C:47. The void for vagueness doctrine applies only to criminal statutes that either define criminal offenses or fix the range of permissible sentences for a criminal offense. *See Beckles v. United States*, 580 U.S. 256, 262 (2017). It does not appear that Section 2C:47 does either of these. However, as the parties do not address this issue, the Court declines to make a finding.

[9] In their response to Defendant Rutgers' motion to dismiss, Plaintiffs now appear to raise an "as-applied" due process challenge to Section 2C:47-1. (*See* ECF No. 51 at 22-26.) An as-applied attack "does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." *Marcavage*, 609 F.3d at 273. In their opposition, Plaintiffs now argue that based on the facts of individual Plaintiffs' cases, the terms "compulsive and repetitive" are too vague. (*See* ECF No. 51 at 22-26.) Plaintiffs argue in their response that "discovery records" from their criminal cases show that some Plaintiffs were not compulsive as they "spent months, if not years, grooming victims." (*Id.* at 22-23.) They also argue that many Plaintiffs' actions cannot be found as repetitive because "records show that only had one victim" or only offended one time. (*Id.* at 24.) As explained above, it is well-established that a pleading may not be amended by a brief in opposition to a motion to dismiss, *Zimmerman*, 836 F.2d at 181, the Court will disregard any arguments made as to the legal theory of an as-applied challenge to the Second Amended Complaint, as it is not specifically pled in the Second Amended Complaint. The Court will allow Plaintiffs to file an amended complaint to clarify their due process arguments. However, the Court notes that it is unclear at this time based on the pleadings whether Plaintiffs can join individual as-applied challenges to N.J. Stat. Ann. § 2C:47-1 in one action.

The self-incrimination clause of the Fifth Amendment as applied to the states through the Fourteenth Amendment provides that "no person shall be compelled in any criminal case to be a witness against himself." *Allen v. Illinois*, 478 U.S. 364 (1986) (quoting *Malloy v. Hogan*, 378 U.S. 1 (1964)). The Supreme Court has firmly established that the privilege may be asserted when the need arises to prevent revelation of self-incriminating information that could be used in future criminal proceedings. *Id.* at 368. The Court has extended this privilege to provide that "the privilege against self-incrimination not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also privileges him not to answer official questions put to him in any other proceedings, civil or criminal, formal or informal, where the answer might incriminate him in future criminal proceedings." *Allen*, 478 U.S. at 368 (quoting *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984)).

The United States Supreme Court has held that the Fifth Amendment right against compelled self-incrimination was not violated by a prison sexual-abuse treatment program that required the inmates to disclose all prior sexual activities. *See McKune*, 536 U.S. 24. In *McKune*, the inmate was ordered to participate in a Sexual Abuse Treatment Program ("SATP"). *Id.* at 30. Participating inmates were required to complete and sign an "Admission of Responsibility" form, whereby accepting responsibility for the crimes for which they had been sentenced, as well as providing a complete sexual history regardless of whether that history constituted uncharged criminal offenses. *Id.* If the inmate refused to participate in the SATP and to provide the required information, the inmates privileges were reduced, i.e. visitation rights, work opportunities, access to a television, etc., and the inmate would be transferred to a maximum-security unit. *Id.* at 30-31. The inmate in *McKune* refused to participate in SATP, claiming that the required disclosures of his criminal history would violate his Fifth Amendment privilege against self-incrimination. *Id.* at

31. The Supreme Court noted that the main question was "whether the State's program, and the consequences for nonparticipation in it, combine to create a compulsion that encumbers the constitutional right." *Id.* at 35. After finding that rehabilitation is a legitimate penological interest, it was found that "[a] prison clinical rehabilitation program . . . does not violate the privilege against self-incrimination if the adverse consequences an inmate faces for not participating are related to the program objectives and do not constitute atypical and significant hardships in relation to the ordinary incidents of prison life." *Id.* at 36-38. The Supreme Court found that because the refusal to participate in SATP would not extend the inmates term of incarceration, but rather would result in him being transferred to a different prison, the requirement to disclose sexual history did not amount to compelled self-incrimination prohibited by the Fifth Amendment. *Id.* at 38-39.

Similarly, here, Plaintiffs' refusal to provide information regarding previous sexual activities during their psychological examination could result in placement in a different state prison, rather than placement in the ADTC. Certainly, New Jersey has a legitimate penological interest in rehabilitating its most dangerous and compulsive sex offenders. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (recognizing rehabilitation as a "valid penological objective"). Plaintiffs submit that the sexual history requested is used in making a finding of "compulsive and repetitive." (ECF No. 46 at ¶ 18.) That finding allows the sentencing court to consider housing Plaintiffs at ADTC where sexual offenders can receive rehabilitative treatment. Plaintiffs do not argue, and it is not the case, that their sentences would have been extended if they refused to provide the requested information. Rather, a criminal defendant's refusal to provide the examiner with their sexual history would potentially result in them not being found "compulsive and repetitive" and being sentenced to a different state prison than the ADTC. Considering the consequence that Plaintiffs could be placed in a different state prison and the legitimate penological

objective of sexual offender treatment at ADTC, the Second Amended Complaint fails to state a Fifth Amendment privilege against self-incrimination claim. *McKune*, 536 U.S. at 38-39. Defendant Rutgers' motion to dismiss is granted as to this claim and Plaintiffs' Fifth Amendment privilege against self-incrimination claim is dismissed without prejudice.

### E. Plaintiffs Fail to Plead a § 1983 Fourteenth Amendment Equal Protection Clause Claim (Count Two)

Next, Defendant Governor Murphy moves for dismissal of Plaintiffs' Fourteenth Amendment Equal Protection Clause claim. (*See* ECF No. 43-1 at 32-38.) Defendant Governor Murphy contends that Plaintiffs, who are individuals with a classification as sex offenders who are sentenced to ADTC after they are determined by the court to be repetitive and compulsive, are not a suspect class. (*Id.* at 36-37.) Thus, Defendant argues that the statutes and policies at issue need only meet the rational basis test to survive Plaintiffs' equal protection claim. (*Id.*)

In the Second Amended Complaint's preliminary statement, Plaintiffs submit that they are raising a Fourteenth Amendment equal protection clause claim. (ECF No. 46 at 4.) Although Plaintiffs do not expressly do so in the causes of action section of the Complaint (*see id.* at 8-20.), the Court, considering the *pro se* nature of the Second Amended Complaint, nevertheless construes Count Two as raising an equal protection clause claim. (*Id.* at 12-15.) In support, Plaintiffs allege that the State used Plaintiffs' classification of being "compulsive and repetitive" against them to enact and enforce laws, policies, rules, and procedures "that are designed solely to discriminate against the Plaintiffs based on their race, place of origin, intellectual/mental disability, and/or sexual orientation[10], by denying them access to the same parole, educational, rehabilitative, and recreational opportunities" offered to other inmates not housed at ADTC. (*Id.* at ¶ 32.) Plaintiffs

---

[10] The Second Amended Complaint is devoid of facts specific to each Plaintiff regarding their "race, place of origin, intellectual/mental disability, and/or sexual orientation." (*See generally* ECF No. 46.)

submit that during the Covid-19 pandemic, Defendant Governor Murphy signed several bills and executive orders which allowed for reduction in prisoners' sentences or allowed for parole in specific situations but excluded inmates "whose conduct was characterized by a pattern of repetitive and compulsive behavior." (*Id.* at ¶¶ 33-36.) Plaintiffs also claim that certain New Jersey Statutes exclude inmates found to be "compulsive and repetitive" from certain educational opportunities, computer trainings, and electronic books. (*Id.* at ¶¶ 37-44.)

The Fourteenth Amendment's Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To prevail on an equal protection claim, a plaintiff must present evidence that he has been treated differently from persons who are similarly situated. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Here, the executive orders and statutes cited by Plaintiff distinguish on their face between "compulsive and repetitive" inmates and other inmates, because only sex offenders found to be "compulsive and repetitive" would be excluded from the cited orders and statutes.

In the next step of the equal protection analysis, the court must determine which standard of review applies to its assessment of the challenged law. Laws that involve a suspect or quasi-suspect classification, such as race, religion, alienage, or gender, are subject to a heightened standard of review. *City of Cleburne*, 473 U.S. at 440–41. "Similar oversight by the courts is due when state laws impinge on personal rights protected by the Constitution." *Id.* at 440. On the other hand, if the law does not involve a suspect or quasi-suspect classification or fundamental constitutional right, then it "is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Id.*

The Third Circuit has specifically recognized that the category of repetitive and compulsive sex offenders is not a suspect or quasi-suspect class. *Artway v. Attorney Gen. of State of N.J.*, 81 F.3d 1235, 1267 (3d Cir. 1996). Therefore, a classification of "repetitive" and "compulsive" does not implicate a fundamental right that warrants heightened scrutiny. *Id.; Dantzler v. Tennis*, No. 08-1612, 2008 WL 4274486, at *2 (E.D. Pa. Sept. 17, 2008) ("The Equal Protection Clause . . . affords no heightened scrutiny of a state's treatment of sex offenders."). Here, Plaintiffs are not members of a suspect or quasi-suspect class under the Equal Protection Clause based on their compulsive and repetitive classification. Thus, if Defendants offer "some plausible reason—a 'rational basis'—for treating [inmates classified as compulsive and repetitive] differently from other prisoners or parolees," Plaintiffs' equal protection claim will fail. *Dantzler*, No. 08-1612, 2008 WL 4274486, at *2.

New Jersey's interest in protecting citizens from sexual offenses is a legitimate state interest. *See Artway*, 8 F.3d at 1268 ("[p]rotecting vulnerable individuals from sexual offenses is certainly a legitimate state interest."); *see also L.A. v. Hoffman*, 144 F.Supp.3d 649, 676 (D.N.J. Oct. 28, 2015) ("protecting the public from sex offenses is a compelling governmental interest.") Restricting sexual offenders who have been classified as "compulsive and repetitive" from early release or access to computers and electronic books satisfies the requirement that the restrictions be rationally related to a legitimate state interest. *See, e.g., State v. Wingler*, 25 N.J. 161, 176, 135 A.2d 468 (1957) (holding that classification of repetitive and compulsive sex offenders "has a rational basis"); *Mahfouz v. Lockhart*, 826 F.2d 791, 794 (8th Cir.1987) (applying rational basis test to hold that Arkansas statute excluding sex offenders from work/study release program for inmates did not violate equal protection); *Belton v. Singer*, No. 10-6462, 2011 WL 2690595 at *12 (D.N.J. July 8, 2011), citing *Thornburg v. Abbott*, 490 U.S. 401, 413 (1989) ("In the prison setting,

regulations that restrict a prisoner's access to use and own electronic equipment are 'valid [if they] are reasonably related to legitimate penological interests.'"); *Semler v. Ludeman*, 2010 WL 145275, *9–16 (D. Minn. Jan. 8, 2010) (finding institution rules governing media, mail, personal property, telephone access and association between patients confined as sexually violent persons are valid [] because they are reasonably related to legitimate security and rehabilitative interests); *Spicer v. Richards*, 2008 WL 3540182, *7–8 (W.D. Wash. Aug. 11, 2008) (state facility for civil detainee's "ban on the possession of electronic devices is reasonably related to the security and safety risks posed to [its] residents, staff, visitors, and the public," and therefore not violative of civil detainee's constitutional rights). Plaintiffs provide no basis to conclude that these acceptable justifications do not apply here. The Second Amended Complaint does not allege facts that Plaintiffs are denied access to all educational opportunities, oror that they are denied access to non-electronic books. Because Defendants' treatment of those classified as "compulsive and repetitive" satisfies the Equal Protection Clause "rational basis" test, Plaintiffs' claim will be dismissed without prejudice.

### F. Plaintiffs Fail to Plead a § 1983 Eighth Amendment Cruel and Unusual Punishment Claim (Count Two)

Defendant Murphy moves to dismiss Plaintiffs' Eighth Amendment cruel and unusual punishment claim, arguing that Plaintiffs have failed to allege facts stating a *prima facie* Eighth Amendment claim. (*See* ECF No. 43-1 at 39-40.)

The Eighth Amendment forbids the "inflict[ion]" of "cruel and unusual punishments." U.S. Const. amend VIII. The Eighth Amendment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Prison officials must also "take reasonable measures to guarantee the safety of . . . inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984) (citing *Farmer*, 511 U.S. at 832). Verbal harassment of a prisoner, even if offensive, however, does not give rise to an independent

constitutional violation. *See Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) (per curiam) (holding that threats that inmate was a "marked man and that his days were numbered" did not state Eighth Amendment claim).

The Second Amended Complaint submits that prison officials subject inmates to "routine humiliation" by calling them "retards and other demeaning names." (ECF No. 46 at ¶ 49.) Plaintiffs assert that prison officials also "allow the time when they receive their medications [to] be referred to as 'happy hour.'" (*Id.*) Plaintiffs do not allege any physical abuse in conjunction with the verbal harassment by the prison guards to elevate this claim to one of constitutional magnitude. While Plaintiffs raise several specific allegations of verbal threats and harassment in their response to the motion to dismiss, Plaintiffs may not amend their complaint in a brief in opposition to a motion to dismiss. *Zimmerman*, 836 F.2d at 181. The Court notes that in their responsive brief, Plaintiffs submit several facts regarding harassment of other inmates, such as assertions that "inmates were subjected to repeated sexual harassment," "inmates filing grievances are . . . coerced into signing blank forms ending their grievance," an inmate was ordered to not come to the dayroom because of a hearing impairment, and an inmate with mental disabilities has been the "subject of non-stop verbal abuse." (ECF No. 50 at 40-44.) However, Plaintiffs generally have no standing to bring claims on behalf of other inmates. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) (a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties"). Consequently, Defendant Governor Murphy's motion to dismiss is granted as to this issue, and Plaintiffs' Eighth Amendment claim is dismissed without prejudice.

## G. Plaintiffs Fail to Plead an Americans with Disabilities Act Claim (Count Two)

Defendant Governor Murphy contends that Plaintiffs' ADA claim should be dismissed for failure to allege facts stating a prima facie cause of action. (*See* ECF No. 43-1 at 43-45.) Defendant argues that while it is unclear, Plaintiffs appear to premise their ADA claim upon the allegation that the psychological tests they were required to undergo "are designed to solely discriminate against the Plaintiffs based on their . . . intellectual/mental disability." (*Id.* at 43-44, citing ECF No. 46 at ¶ 37.) Defendant Governor Murphy also points to Plaintiffs' assertions that "various statutes and Executive Orders treat sex offenders deemed compulsive and repetitive differently than other State prison inmate." (*Id.*, citing ECF No. 46 at ¶¶ 33-37.) Defendant Murphy argues that Plaintiffs fail to allege any facts supporting the inference that they are qualified individuals with a disability, instead alleging in a conclusory fashion that they are "suffering from an intellectual/mental disability." (*Id.* at 44.)

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under Title II of the ADA, plaintiff must allege that: "(1) he is a 'qualified person with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Jordan v. Delaware*, 433 F.Supp.2d 433, 439 (D. Del. 2006). The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual," "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1). "[M]ental illness qualifies as a disability under" the ADA.

*Disability Rts. N.J., Inc. v. Comm'r, N.J. Dep't of Hum. Servs.*, 796 F.3d 293, 301 (3d Cir. 2015); 28 C.F.R. § 35.108(d)(2)(iii).

Plaintiffs' Second Amended Complaint raises claims that certain regulations and executive orders treat Plaintiffs differently based on their classification as exhibiting "compulsive and repetitive behavior." However, as Defendant Governor Murphy argues, Plaintiffs fail to submit facts to support an argument that they are qualified individuals with a disability. While Plaintiffs make a conclusory argument that they suffer from "intellectual/mental disabilities," the Second Amended Complaint lacks facts to show that each individual Plaintiff has been diagnosed with an intellectual or mental disability by a medical professional. Plaintiffs appear to argue in their response to the motion to dismiss that a classification of "compulsive and repetitive" is a finding of mental illness. (*See* ECF No. 50 at 48-49.) However, the facts in the Second Amended Complaint submit only that following psychological testing, Plaintiffs have been classified as exhibiting "compulsive and repetitive" behavior. There are no facts in the Second Amended Complaint that every Plaintiff listed in the Complaint has been diagnosed with a mental illness. More importantly, Plaintiffs allege that certain regulations and orders deny inmate opportunities based on the classification, not based on mental illness. The facts presented submit that Plaintiffs are being restricted based on compulsive and repetitive behaviors, not based on a mental illness diagnosis. The Second Amended Complaint does not plead facts that Plaintiffs were individually diagnosed with a mental illness or that they are being excluded from certain programs or opportunities based on mental illness. As such, Defendant Governor Murphy's motion to dismiss is granted as to Plaintiffs' ADA claim is dismissed without prejudice.

## H. State Law Claims

Defendant Murphy also moves for dismissal of Plaintiffs' state law claims. (*See* ECF No. 43-1 at 27-28.) In addition to his federal claims, Plaintiff raises the following claims arising under state law: (1) New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1 (Count Two); (2) Breach of Contract (Count Three); Negligence (Count Four); Fraud and Unjust Enrichment (Count Four); and Misappropriation of Funds (Count Five).

The potential basis for the Court's jurisdiction over Plaintiffs' state law claims is supplemental jurisdiction pursuant to 28 U.S.C. § 1367. "Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 387 (1998).

Where a district court has original jurisdiction over federal claims and supplemental jurisdiction over state claims, the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). Where courts dismiss federal claims at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

Here, the Court has dismissed the federal claims at an early stage. Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines supplemental jurisdiction over any potential state law claims at this time.[11]

---

[11] The Court's may exercise supplemental jurisdiction and review state law claims subject to Plaintiffs' amendment of any pleadings consistent with this Opinion. Defendants may renew any request for dismissal of state law claims at such time.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss (ECF Nos. 43 and 44) are **GRANTED**[12] and Plaintiff Mario Palomo's federal claims are **dismissed with prejudice**. The remaining Plaintiffs' Fifth and Fourteenth Amendment due process claims (Count One), Fifth Amendment privilege against self-incrimination claims (Count Two), Fourteenth Amendment Equal Protection Clause claims (Count Two), Eighth Amendment claims (Count Two), and ADA claims (Count Two) are **dismissed without prejudice**. The Court declines supplemental jurisdiction over any potential state law claims at this time. Plaintiffs may submit a third amended complaint within 45 days that cures the deficiencies in their federal claims, and may reassert their state law claims.

An appropriate Order accompanies this Opinion.

Dated: November <u>26th</u>, 2024

JULIEN XAVIER NEALS
United States District Judge

---

[12] As the Court is granting the motions and dismissing the Second Amended Complaint without prejudice for the reasons discussed above, the Court will not address the additional arguments raised by Defendants in their motions.